**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | | | |
|---|---|---|---|
| IN RE: | ) | CASE NO. | 18-20095 (JJT) |
| | ) | | |
| **FERNANDO P. RODRIGUES,** | ) | CHAPTER | 7 |
| DEBTOR. | ) | | |
| | ) | | |
| **SONDRA BEAURIVAGE BANFORD,** | ) | ADV. PRO. NO. | 18-02017 (JJT) |
| PLAINTIFF | ) | | |
| | ) | RE: ECF NOS. | 1, 13, 35 |
| V. | ) | | |
| | ) | | |
| **FERNANDO P. RODRIGUES,** | ) | | |
| DEFENDANT. | ) | | |

**APPEARANCES**

Sondra Beaurivage Banford                                   *Pro Se*
58 Old Studio Road
New Canaan, CT 06840

Fernando P. Rodrigues                                       *Pro Se*
54 Old Oak Road
West Hartford, CT 06117

**POST-TRIAL MEMORANDUM OF**
**DECISION REGARDING NONDISCHARGEABLE DEBT**

I.     INTRODUCTION

The Plaintiff, Sondra Beaurivage Banford, filed her complaint ("Complaint," ECF No. 1) against the Defendant, Fernando P. Rodrigues ("Debtor"), on May 4, 2018. In the Complaint, Mrs. Banford asks this Court, pursuant to 11 U.S.C. §§ 523(a)(2)(A) or (a)(4), to deem nondischargeable a stipulated judgment ("Stipulated Judgment") debt that the Debtor owes her.

The dispute between these parties originates in a prior proceeding in the Superior Court, where, on or about December 19, 2006, Mrs. Banford initiated an action against the Debtor ("State

Court Action").[1] In her underlying third revised substitute complaint ("State Court Complaint"), Mrs. Banford alleged that the Debtor had verbally agreed to form a limited liability company ("LLC") with her to pursue a joint property venture, which became Westover Ridge, LLC ("Westover"). The Debtor, on behalf of Westover, purchased a piece of property ("Property") for $250,000.00 on August 9, 2006, of which Mrs. Banford funded $123,312.00 of the purchase price. Mrs. Banford alleged that before she delivered the check to the Debtor for $123,312.00, the Debtor agreed to add her as a 50% member of Westover. Mrs. Banford was never added as a member, nor has she demonstrated to the Court the material terms of this LLC arrangement. Westover sold the Property for $350,000.00 on October 27, 2006, and Mrs. Banford did not receive any money from the sale. She alleged that the Debtor breached the joint venture agreement and fraudulently sold the Property, entitling her to a constructive trust against the Debtor's membership interest in Westover, the sale proceeds from the Property, any distributions from Westover to the Debtor, and any assets obtained through the Property's conversion. To come to its decision on nondischargeability, she asks this Court to rely principally upon the State Court Complaint and the resulting Stipulated Judgment[2] that the Superior Court entered against the Debtor for $123,000.00.

Having considered the pleadings, testimony, admitted evidence, the State Court Action docket, the Court's own docket, and the parties' arguments, the Court finds that Mrs. Banford has failed to meet her burden of proof to establish that the alleged debt is nondischargeable under theories of false pretenses, false representation, or actual fraud, pursuant to 11 U.S.C. § 523(a)(2), or under the theories of fraud as a fiduciary, embezzlement, or larceny, pursuant to 11 U.S.C. § 523(a)(4).

---

[1] The case is *Banford v. Rodrigues*, Connecticut Superior Court, Judicial District of Hartford, Docket No. CV07-5007929-S.

[2] The Stipulated Judgment was merely embodied in a dialogue captured in a court transcript as opposed to a formal written stipulated judgment filed with the Superior Court.

II.     JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1334(b) and may hear and determine this matter pursuant to the District Court's General Order of Reference dated September 21, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Venue is proper under 28 U.S.C. § 1409(a).

III.    FINDINGS OF FACT

In accordance with Fed. R. Civ. P. 52 and Fed. R. Bankr. P. 7052, after notice and a hearing and the Court's consideration of the record, the Court makes the following findings of facts in addition to those in the Introduction:

**Background**

1. At all relevant times, the Debtor was the owner and member of Westover. Def.'s Post-Trial Br. 1; ECF No. 27. Westover was registered with the Secretary of State on June 2, 2006 with the Debtor as its manager and has since dissolved.

   THE OFFICE OF SECRETARY OF THE STATE DENISE W. MERRILL, https://www.concord-sots.ct.gov/CONCORD/online?sn=PublicInquiry&eid=9740 (last visited Apr. 22, 2019).

2. Mrs. Banford has been a licensed realtor in Connecticut for over 25 years and has sold real estate in Greenwich, Connecticut since 1999. ECF No. 27.

**Property Sale**

3. On August 7, 2006, Mrs. Banford delivered a cashier's check to the Debtor for $123,312.00. State Ct. Am. Compl. ¶ 15; Def.'s Post-Trial Br. 1.

4. On August 9, 2006, Westover purchased the Property, which consisted of a vacant piece of real estate at 14 Northridge Drive, West Hartford, Connecticut 06117. Def.'s Post-Trial Br. 1.

**Parties' Agreement Terms**

5. Thereafter, on October 20, 2006, Westover executed a promissory note ("Note") with Mrs. Banford for $123,312.00. Pl.'s Ex. F; ECF No. 28. No mortgage was ever executed or recorded against the Property.

6. The Debtor signed the Note on Westover's behalf, as its member. Pl.'s Ex. F.

7. Under the terms of the Note, Westover agreed to pay 8% interest per *annum*, with interest and principal to be paid within two years. Pl.'s Ex. F.

8. Mrs. Banford agreed to waive all interest payments should she later become a member of Westover. Pl.'s Ex. F.

9. At trial, Mrs. Banford never produced any joint venture agreement between her and the Debtor regarding her membership in Westover.

10. Mrs. Banford also failed to produce any evidence of an escrow agreement between her and the Debtor or between her and Westover that would assure her receipt of proceeds from a sale of the Property.

**Subsequent Property Transfer**

11. Westover sold the Property on October 27, 2006. Def.'s Post-Trial Br. 2; ECF No. 28.

**State Court Action**

12. On December 13, 2006, Mrs. Banford initiated the State Court Action, bringing claims against the Debtor and Westover, amongst others, for fraud, breach of fiduciary duties, conversion, and theft. State Ct. Am. Compl. ¶¶ 2, 4, 7–9, 40, 57; Def.'s Post-Trial Br. 2. Mrs. Banford based her allegations on a verbal joint venture agreement between her and the Debtor, where each would have an equal membership interest in Westover. State Ct. Am. Compl. ¶ 11. According to Mrs. Banford, the Debtor allegedly formed Westover to further their joint venture

pursuit. State Ct. Am. Compl. ¶ 12. She asserts that the Debtor used the provided $123,312.00 to purchase the Property and profit substantially from its sale a short two months later without her consent or benefit as a co-partner. State Ct. Am. Compl. ¶¶ 19, 22, 24–26.

13. On December 9, 2008, after nearly six hours of settlement negotiations, Mrs. Banford, represented by legal counsel, obtained the Stipulated Judgment against the Debtor in the amount of $123,000.00. State Ct. J. Tr. 3, 6. In exchange, Mrs. Banford withdrew her claims on the record against all of the parties except for the Debtor, and the Debtor withdrew his counterclaim and cross-claim against Mrs. Banford and her husband on the record to cease litigation. State Ct. J. Tr. 4, 7–8, 10–11. The Debtor expressly did not admit to any of the allegations in Mrs. Banford's State Court Complaint, as part of the Stipulated Judgment, in the State Court Action, or during this Adversary Proceeding. *See generally* State Ct. J. Tr.; Answer 1; Def.'s Post-Trial Br. 6.

14. The Debtor agreed to pay $8,000.00 of the Stipulated Judgment within 30 days and pay the remaining $115,000.00 by partial payments on December 1 of each year over eight years at a 6% interest rate, with the option to pay early. State Ct. J. Tr. 3–4. Should the Debtor have defaulted, Mrs. Banford was entitled to enforce the Stipulated Judgment immediately, along with the collection costs and attorney's fees. State Ct. J. Tr. 5.

15. Legal counsel represented, assisted, and advised Mrs. Banford during the settlement negotiations and the Stipulated Judgment proceedings. State Ct. J. Tr. 2. Mrs. Banford was satisfied with counsel's advice. State Ct. J. Tr. 7. When asked on the record by the Superior Court whether she understood the Stipulated Judgment's terms, she confirmed that she did. State Ct. J. Tr. 6. She also confirmed that nobody had pressured or coerced her into accepting the settlement terms. State Ct. J. Tr. 6. Likewise, the Debtor represented to the Superior Court

that he entered into the Stipulated Judgment of his own free will and that he was satisfied with its terms. State Ct. J. Tr. 9–10.

16. The Debtor made the $8,000.00 payment but failed to make the remainder of the payments. Compl. ¶ 7; Def.'s Post-Trial Br. 3.

### Debtor's Bankruptcy Filing

17. The Debtor filed a voluntary petition (Case No. 18-20095 (JJT), ECF No. 1) for Chapter 7 bankruptcy protection on January 24, 2018.

18. On May 4, 2018, Mrs. Banford commenced this Adversary Proceeding by filing the Complaint.

19. The Debtor filed an answer (ECF No. 13) on July 6, 2018, denying the Complaint's and the State Court Complaint's allegations. He did not interpose any affirmative defenses.

20. Although originally represented by counsel, Mrs. Banford has proceeded *pro se* since the Court granted her attorney's motion to withdraw (ECF No. 18) on October 11, 2018 (ECF No. 19).

21. The Court held a trial on the Complaint on January 16, 2019, at which time the Court ordered any post-trial briefs due by January 30, 2019. The Debtor filed his post-trial brief on the ordered deadline (ECF No. 35).

22. At Mrs. Banford's request, the Court twice extended the deadline to file post-trial briefs on January 30, 2019 (ECF No. 33) and March 1, 2019 (ECF No. 40) to allow Mrs. Banford time to find substitute legal counsel. Mrs. Banford never filed a post-trial brief or had legal counsel file a notice of appearance in this Adversary Proceeding.

IV. DISCUSSION

    A. Dischargeability

Discharge exceptions are important because the Bankruptcy Code allows for virtually all types of debts to be discharged through bankruptcy. *State Bank of India v. Chalasani (In re*

*Chalasani)*, 92 F.3d 1300, 1309 (2d Cir. 1996). Discharge exceptions are "narrowly construed and genuine doubts should be resolved in favor of the debtor." *Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 66 (2d Cir. 2007) (citation omitted). This is consistent with the Bankruptcy Code's chief purpose of providing a "fresh start" to the "honest but unfortunate debtor." *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007) (internal quotation marks omitted) (quoting *Grogan v. Garner*, 498 U.S. 279, 286–87 (1991)). Under 11 U.S.C. § 523(a), to prevail on a nondischargeability claim, including for fraud, the plaintiff's burden is to prove all elements of each asserted claim for relief by a preponderance of the evidence. *Grogan,* 498 U.S. at 287–88.

  B. Preclusive Effect of the Stipulated Judgment

"Where the debt in question is a judgment entered after a claim of fraud has been *adjudicated*, either party to a subsequent adversary proceeding on nondischargeability can invoke collateral estoppel to establish that the debt is or is not dischargeable under the relevant nondischargeability provision." *Giaimo v. DeTrano (In re DeTrano)*, 326 F.3d 319, 322 (2d Cir. 2003) (emphasis added) (citing *Grogan*, 498 U.S. at 285–91).

As the parties entered a voluntary Stipulated Judgment in Connecticut Superior Court, Connecticut law on preclusion does not apply. The Connecticut Supreme Court has held that "[c]laim preclusion prevents a litigant from reasserting a claim that has already been decided on the merits. . . . [I]ssue preclusion . . . prevents a party from relitigating an issue that has been determined in a prior suit." *Rocco v. Garrison*, 268 Conn. 541, 554, 848 A.2d 352, 360–61 (Conn. 2004) (citation and internal quotation marks omitted). "An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and [is] in fact determined. . . . To assert successfully the doctrine of issue preclusion, therefore, a party must establish that the issue sought to be foreclosed actually was litigated and determined in the prior action between the

parties or their privies, and that the determination was essential to the decision in the prior case." *Id.* at 555 (citation and internal quotations marks omitted).

Just like in *Archer v. Warner*, "what has *not* been established here . . . is that the parties meant to resolve the *issue* of fraud or, more narrowly, to resolve that issue for purposes of a later claim of nondischargeability in bankruptcy." 538 U.S. 314, 322 (2003). Since neither the claims nor the issues have been actually litigated and decided on the merits, the Stipulated Judgment bears no weight in this Court's determination of whether fraud excepts this debt from dischargeability. Mrs. Banford has the right to litigate her causes of action under the Bankruptcy Code in front of this Court because the Superior Court never issued a valid and final judgment on the merits of her underlying fraud claims in the State Court Action. To the extent that she endeavored to do so, it proved insufficient. The Debtor's express denial of the State Court Complaint allegations as part of the Stipulated Judgment proceedings was, and remains, plain, clear, and unequivocal. The Stipulated Judgment merely provided for the repayment of a claimed indebtedness without attribution of any fault.

C.  Count I: False Pretenses, False Representation, or Actual Fraud

A debt will not be discharged when it was procured through "false pretenses, a false representation, or actual fraud[.]" 11 U.S.C. § 523(a)(2). The property need not "actually be gained for the direct benefit of the debtor. Even an indirect benefit to the debtor [will do] within the meaning of section 523(a)(2)(A)." 4 Alan N. Resnick & Henry J. Sommer, COLLIER ON BANKRUPTCY ¶ 523.08[1][d], p. 523-45 (16th ed.). The frauds in this section "involve moral turpitude or intentional wrong; fraud implied in law, which may be established without imputation of bad faith or immorality, is insufficient." *Id.* at 523-45–523-46; *see also Kuper v. Spar (In re*

*Spar)*, 176 B.R. 321, 327 (Bankr. S.D.N.Y. 1994). The Court will hereinafter dissect all three claims in Count I to confirm that Mrs. Banford has failed to meet her burden of proof.

>    1. <u>False Pretenses and False Representation</u>

The debtor must have knowingly and fraudulently made the false representation to obtain the money, COLLIER ON BANKRUPTCY, at 523-46, and the plaintiff must have justifiably relied on the representation. *Field v. Mans*, 516 U.S. 59, 74–75 (1995). The false representation must be made to induce the fund procurement; subsequent misrepresentations will not do. COLLIER ON BANKRUPTCY, at 523-46. Breaking a promise is insufficient to prove nondischargeability, but making a contractual promise with no intent to follow through on the contract's obligations might suffice. *Id.* at 523-47.

Mrs. Banford has failed to provide any evidence that the Debtor knowingly and fraudulently made a false representation to procure the $123,312.00 cashier's check from her. Although it may have been her hope or expectation that a joint venture partnership would ensue, it was neither reasonable, nor justifiably reliable, that such might occur in the absence of material terms and assurances. The evidentiary record shows that she had readily given the money to the Debtor for Westover based upon her unilateral expectations and friendship with the Debtor.

Basing her nondischargeability claims on the Note is also a non-starter. By the time Westover signed the Note, she had already provided the money to the Debtor. After reviewing the Note, her lone piece of contractual evidence, a plain language reading of it negates any justifiable reliance on a partnership accord because it speaks only of the *possibility* of her becoming a member of Westover at some point in the future. The Note, by its terms, characterizes: 1) the debt as a borrowing, and 2) a partnership as a heretofore unfulfilled expectation or possibility. Mrs. Banford failed to show any other contractual obligation, such as a joint venture agreement, partnership

agreement, or term sheet, that substantiated her claims that the Debtor induced her into providing the funds to him or to Westover in exchange for an interest in the LLC.

2. Actual Fraud

Historically, the Supreme Court has construed the terms in 11 U.S.C. § 523(a)(2)(A) to contain the "elements that the common law has defined them to include." *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2016) (internal quotation marks omitted) (quoting *Field*, 516 U.S. at 69 (1995)). "The word 'actual' has a simple meaning in the context of common-law fraud: It denotes any fraud that 'involv[es] moral turpitude or intentional wrong.'" *Ritz*, 136 S. Ct. at 1586 (quoting *Neal v. Clark*, 95 U.S. 704, 709 (1878)). Put simply, actual fraud is fraud "done with wrongful intent" and requires scienter. *Ritz*, 136 S. Ct. at 1586.

Where she cannot prove false pretenses or false representation, Mrs. Banford too cannot prove actual fraud. There was nothing in the testimony or evidence admitted at trial to indicate that the Debtor engaged in actual fraud—a seemingly higher bar than false pretenses and false representation. She cannot rely on unprosecuted claims that she made in the Superior Court for fraud, as they were never adjudicated, and were, in fact, withdrawn by the parties' Stipulated Judgment to repay a sum certain. The Debtor never admitted to any of the allegations in the State Court Complaint. When the Superior Court entered the Stipulated Judgment, it asked Mrs. Banford whether she understood the agreement's import, and Mrs. Banford, then represented by counsel, agreed that she did. Now she is bound to and estopped by what she agreed to before the Superior Court in the Stipulated Judgment.

D. Count II: Fraud or Defalcation While Acting as a Fiduciary, Embezzlement, or Larceny

A debtor will not be discharged on debt that arose from "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny[.]" 11 U.S.C. § 523(a)(4).

1. Fraud as a Fiduciary

To succeed on a fiduciary defalcation claim pursuant to 11 U.S.C. § 523(a)(4), the plaintiff must prove two elements: "(i) the existence of a fiduciary relationship between the Plaintiff and Defendant; and (ii) a defalcation committed by the Defendant in the course of that relationship." *Lefevre v. Fritzson (In re Fritzson)*, 590 B.R. 178, 191–92 (Bankr. D. Conn. 2018) (citations and internal quotation marks omitted).

   *a. Fiduciary Relationship*

"The question of whether a defalcation has occurred is reached only when the threshold determination that the debtor acted in a fiduciary capacity has been made." *Andy Warhol Found. for Visual Arts, Inc. v. Hayes (In re Hayes)*, 183 F.3d 162, 170 (2d Cir. 1999). "Fiduciary capacity" is undefined by the Bankruptcy Code for the purposes of 11 U.S.C. § 523(a)(4). *Id.* at 167. Federal law dictates the scope of the term "fiduciary," which "is different from—and more restrictive than—the traditional common law definition." *In re Fritzson*, 590 B.R. at 192 (citations and internal quotation marks omitted).

Under Connecticut law, a "fiduciary . . . relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to represent the interests of the other." *Martinelli v. Bridgeport Roman Cath. Diocesan Corp.*, 196 F.3d 409, 420 (2d Cir. 1999) (internal quotation marks omitted) (quoting *Murphy v. Wakelee*, 247 Conn. 396, 400, 721 A.2d 1181, 1182 (1998)). "In the seminal cases in which [the Connecticut Supreme Court] has recognized the existence of a fiduciary relationship, the fiduciary was either in a dominant position, thereby creating a relationship of dependency, or was under a specific duty to act for the benefit of another." *Dennis v. Hall (In re Hall)*, 483 B.R. 281, 292 (Bankr. D. Conn. 2012) (quoting *Hi–Ho Tower, Inc. v. Com–Tronics*, Inc., 255 Conn.

20, 38, 761 A.2d 1268, 1278 (2000)). The fiduciary relationship between the two individuals must exist before the debt at issue was created; it cannot "arise merely from the wrongful conduct itself." *In re Fritzson*, 590 B.R. at 192 (citation and internal quotation marks omitted).

Based on the entire evidentiary record, Mrs. Banford was unable to meet her burden of proof to establish that a fiduciary relationship existed between her and the Debtor. While the two parties may have been professional and personal friends for several years, it did not rise to the level of a unique degree of trust—especially not one where the Debtor had the upper hand. In fact, they were essentially equally qualified real estate professionals. With her skill and expertise as a realtor and real estate agent for over a quarter century, Mrs. Banford possessed sufficient knowledge, expertise, and experience to appreciate the consequences of no written accord or agreement. Mrs. Banford in no way depended upon the Debtor or his knowledge when entering into the real estate transaction, and Mrs. Banford has failed to show that the Debtor had any specific duty to act on her behalf. The evidence proves quite the opposite.

Reading the four corners of the Note, the obligation of the Debtor appears to be nothing more than a friendly loan to his LLC, with the potential for LLC membership at some future time. The undefined possibilities inherent in that prospect, real or not, are too attenuated for this Court to determine that any type of fiduciary relationship existed. The Court cannot overlook that Mrs. Banford made and papered the deals and expectations of her imperfect Note and Stipulated Judgment with the assistance of legal counsel. The Court need not look to prong two of the fiduciary defalcation test since Mrs. Banford is unable to prove a threshold fiduciary relationship existed.

2. Embezzlement

The Bankruptcy Code prohibits discharging any debt committed furthering embezzlement. 11 U.S.C. § 523(a)(4). Federal common law defines embezzlement "as the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." *In re Fritzson*, 590 B.R. at 196–97 (Bankr. D. Conn. 2018) (citation and internal quotation marks omitted). It also involves two prongs: "(1) that the Defendant appropriated the subject funds for his own benefit; and (2) that he did so with fraudulent intent or deceit." *Id.* (citation and internal quotation marks omitted). The plaintiff must make "a showing of wrongful intent[,]" *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 274 (2013) (citation omitted), which "may be determined from the facts and circumstances surrounding the act." *3N Int'l, Inc. v. Carrano (In re Carrano)*, 530 B.R. 540, 558 (Bankr. D. Conn. 2015) (citation and internal quotation marks omitted).

Here, the first element is not met. The Debtor used the appropriated funds from Mrs. Banford to purchase property on Westover's behalf, as he represented. Mrs. Banford simultaneously argues that the Debtor signed the Note on Westover's behalf for its benefit—a benefit from which she hoped to reap a return—while also asserting that the Debtor took the money for himself. These unsubstantiated contentions and inconsistencies undermine her credibility and ability to meet her burden of proof.

Even assuming that Mrs. Banford can meet her burden on the first element, she cannot do so on the second element. The money was used to buy the Property—a goal both the Debtor and Mrs. Banford shared when the money was given to Westover. She failed to procure a mortgage or any other collateral protection on the Property to secure that investment. That Westover ultimately sold the Property and dissipated the proceeds shortly after purchasing it does not affect this Court's

analysis without more proof. The proceeds allegedly went to pay at least $60,000.00 of the Debtor's legal fees. Mrs. Banford was unable to put forth any persuasive evidence that the Debtor had a deceitful state of mind or acted with intent to deceive after coming into possession of the funds.

3. Larceny

Debts furthering larceny are the last type deemed nondischargeable by 11 U.S.C. § 523(a)(4). "Larceny is the fraudulent and wrongful taking and carrying away of the property of another with [the] intent to convert the property to the taker's use without the consent of the owner." *In re Fritzson*, 590 B.R. at 197 (internal quotation marks omitted) (quoting 4 COLLIER ON BANKRUPTCY ¶ 523.10[2], p. 523-77). "As distinguished from embezzlement, the original taking of the property must be unlawful." *In re Fritzson*, 590 B.R. at 197 (citation omitted).

Just as Mrs. Banford failed to meet her burden under embezzlement, she likewise fails under a larceny claim. The Debtor lawfully came into possession of the Note funds with Mrs. Banford's consent. Mrs. Banford failed to provide any document, email, or even a text message that showed the Debtor intended to deceive her into conveying the money to him for an improper use. The Court's analysis starts and ends with that fact, and accordingly Mrs. Banford fails under all the causes of action that she brought in this Adversary Proceeding under 11 U.S.C. § 523(a)(4).

V.    CONCLUSION

In the year 1740, Benjamin Franklin wrote: "Lend Money to an Enemy, and thou'lt gain him, to a Friend and thou'lt lose him."[3] The man whose face appears on the $100.00 bill possessed timeless financial wisdom. Nearly 300 years later, the adage still holds true. The trial evidence only corroborated the indefiniteness of any joint venture partnership, Mrs. Banford's unreasonable

---

[3] BENJAMIN FRANKLIN, POOR RICHARD, 1740 (The Papers of Benjamin Franklin, vol. 2, January 1, 1735, through December 31, 1744, ed. Leonard W. Labaree. New Haven: Yale Univ. Press 1961) (1740).

reliance, and the Debtor's absence of intent to defraud, as opposed to a mere inability to pay. For the reasons stated herein, the Court shall enter judgment in favor of the Debtor. The Debtor's debt amounting to $123,000.00, along with interest and fees, from the Stipulated Judgment to the Plaintiff is adjudged and decreed dischargeable.

Accordingly, it is hereby:

**ORDERED** that, pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(4), any and all claims asserted herein related to the $123,312.00 Note or the $123,000.00 Stipulated Judgment by the Plaintiff against the Debtor in this Adversary Proceeding are **DISCHARGEABLE** debts;

**FURTHER ORDERED** that the Clerk for the United States Bankruptcy Court shall issue a separate judgment consistent with this Decision.

**IT IS SO ORDERED** at Hartford, Connecticut this 23rd day of April 2019.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut